CONERY, Judge.
|, FACTS AND PROCEDURAL HISTORY
After farming for over thirty years, Plaintiff, Wayne Guillot, left the family *843 farming partnership in February 2006. Wayne and his brother, defendant Reece Guillot, had jointly farmed rice and craw-fish, first with their father, and, when he retired, with their own sons. The brothers had grown up and worked together all of their lives, had served as best man at each other’s weddings, and had raised their sons together. When Wayne’s son left the farming partnership, tension in the family began to escalate. Wayne eventually also left the farming partnership to pursue a career as a crop duster and, at the time of the incident in question, Wayne owned a crop dusting service. With tensions rising between the brothers and their sons, a partition of the real estate owned by the partnership was finalized only months before the incident in question. However, the ownership of all moveables and farm equipment was still highly contested, and would not be settled until after the incident prompting this lawsuit.
While the partition of the farm equipment was still in litigation, on March 16, 2008, Wayne went onto the farm property and, using his own trailer, loaded a craw-fish boat[1] used in Reece’s crawfish farming operation onto his trailer and then proceeded to leave the property. March 16, 2008 was Palm Sunday, the start of the busiest week of crawfish season, a fact Wayne acknowledged. At the time the crawfish boat was taken from the farm property, Wayne did not yet have his own crawfish pond and would not have been able to use the crawfish boat in crawfish ^farming operations until the following season. Wayne acknowledged that craw-fish farming was one of the main sources of income for Reece’s farm at that time.
A neighbor alerted Reece that Wayne was removing the crawfish boat from the farm property. Reece tried to stop Wayne from taking the boat but Wayne drove around Reece’s truck. At some point in the sequence of events, Wayne called his wife, who was at their house, and told her to call the police because he was on his way home with the crawfish boat and Reece was following him. Wayne told her that “[tjhere’s going to be trouble.” While in pursuit of Wayne, Reece alerted his son, Benjamin, his partner in the farming operations and codefendant herein, and told him that Wayne was taking a boat they needed for crawfishing. Benjamin left his house and went in the direction that Wayne and Reece were travelling. Benjamin then blocked the road with his truck to try to stop Wayne from going to his house with the crawfish boat. Wayne went off of the road to get around Benjamin’s truck and Benjamin’s and Wayne’s trucks collided in the process. Wayne was able to get around Benjamin’s truck and continue travelling to his home with the boat. Reece and Benjamin followed in close pursuit.
When Wayne arrived home, he parked his truck on his driveway with the crawfish boat in tow. Reece was right behind him and parked on Wayne’s driveway in the vicinity of the rear of Wayne’s truck and the boat. A fight then ensued near the back of Wayne’s truck and the front of Reece’s truck. The evidence is in dispute as to the exact location of the men in relation to their trucks and who threw the first punch. Wayne claimed that Reece charged him and hit him first. Reece *844 claimed that Wayne aggressively charged him and hit him first. There is no dispute that Reece struck Wayne in the eye, and Wayne went down. The fight ended with Reece on top of Wayne, and Reece pummeling Wayne until |<¡he tired of swinging. Wayne was hit in the eye and the surrounding area immediately became swollen and discolored. Reece had a bit of blood around his ear. Benjamin arrived as the two brothers were on the ground, with Reece on top, hitting Wayne. Benjamin was not involved in the fight, except as to allegedly egg his father on. Benjamin was sued only for damages to Wayne’s truck.
The police arrived and questioned witnesses. Reece left to get a trailer, returned to Wayne’s house, put the boat on his trailer, and returned to the farm property with the crawfish boat in tow.
It was later confirmed by Dr. Casanova, Wayne’s treating physician, that Wayne suffered from a fracture to the orbital bones around his left eye, requiring surgery. Wayne claims he now has permanent double vision and can no longer perform the duties of a pilot in his crop dusting business. In his brief to this court, Wayne is claiming that he has $7,363.60 in medical bills, $680,000.00 in past lost income at the time of trial, and an annual loss of future earning capacity equal to $130,000.00 in pilot fees because he can no longer fly and has been forced to pay substitute pilots. Wayne claimed that pursuing a flying career was one of the main reasons he left the family farming operation in the first place and also claims past and future mental anguish, pain and suffering.
Wayne had filed suit against Reece for his personal injuries, Benjamin for his property damage, and Farm Bureau Insurance Company, as insurer of Reece and Benjamin. Farm Bureau filed a motion for summary judgment stating that the conduct committed by Reece and Benjamin was excluded under their policy because their actions were intentional. The trial court granted Farm Bureau’s Rmotion, dismissing the insurance company from the suit. The district court’s grant of summary judgment was later upheld by a panel of this court.[2]
Wayne’s case against Reece and Benjamin proceeded to trial by jury. Using special interrogatories, the jury found that Wayne had “consented” to the intentional battery by Reece, and that Reece was not liable for the injuries to Wayne. Additionally, the jury found Benjamin liable for all damages to Wayne’s vehicle due to Benjamin blocking the roadway. Judgment was signed dismissing Wayne’s suit against Reece and this timely appeal followed. There was no appeal from the judgment for property damages to Wayne’s truck in favor of Wayne against Benjamin, and that issue is not before us.
ASSIGNMENTS OF ERROR
Wayne asserts the following issues on appeal:
1) The jury committed manifest error in concluding that Wayne Guillot consented to the intentional battery he sustained in the face of overwhelming testimony that Reece Guillot was the sole aggressor and that his act was intentional.
2) The court’s jury charges and verdict form constitute a substantive, material legal error, as was objected to by the Plaintiffs counsel, because both in the court’s charges, as well as the verdict form, the “aggressor doctrine” was applied wherein any finding of “consent” by the Plaintiff, relieved the defendant *845 of all liability, directly in contravention of Louisiana Civil Code, Article 2328, and the comparative fault laws of this State.
STANDARD OF REVIEW
Our standard of review is well-established:
[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own Revaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
Stobart v. State through Dep’t of Transp. & Dev., 617 So.2d 880, 882-83 (La.1993). See also Wiley v. Bayou Gaming, Inc., 13-1449 (La.App. 3 Cir. 7/2/14), 142 So.3d 1078.
DISCUSSION

Assignment of Error One

In his first assignment of error, Wayne alleges that the jury committed manifest error in finding that Wayne “consented” to the altercation “in the face of overwhelming testimony that Reece Guillot was the sole aggressor and that his act was intentional.”
At trial, the jury heard conflicting testimony from Wayne and Reece. The jury also heard testimony from four people who all witnessed portions of the altercation. First to testify was Michael Spaetgens. Mr. Spaetgens is a first cousin to Wayne’s wife. He was present at Wayne’s house before and during the fight. Mr. Spaet-gens testified that he and his wife, Charlotte Spaetgens, had gone to Wayne’s house to drop off their camper for a family get-together planned for Easter Weekend. While at Wayne’s house, Wayne’s wife, Susan, explained that Wayne was not home because he “was going to get his crawfish boat.” Mr. RSpaetgens stated that he did not realize that anything was amiss until Wayne phoned his wife and told her that Reece was following him home. Mr. Spaetgens testified that Wayne arrived at home pulling a trailer and a crawfish boat. Reece arrived soon thereafter, followed by Benjamin.
On direct-examination, Mr. Spaetgens testified that the two brothers’ trucks arrived at the house and were “almost side-by-side.” Additionally, Mr. Spaetgens testified that he saw Reece throw the first *846 punch, but never saw Wayne throw a punch. However, on cross-examination, counsel for Defendants established that Mr. Spaetgens had testified in his deposition that the trucks were one behind the other and that Mr. Spaetgens had stated that he never saw any of the punches in the fight.
Mrs. Spaetgens testified that after Wayne parked, Reece “came in behind him and parked like towards the back of the trailer, more towards the side.” Mrs. Spa-etgens stated that the fight took place “[r]ight behind the back wheel of Wayne’s truck.” She further testified that she did see Reece punch Wayne first, but did not see any punches after the first until she went between the truck and the trailer and saw Reece on top of Wayne punching him. Mrs. Spaetgens testified that she did not see Wayne punch Reece, however, there was a period of time where she could not see anything between the first punch and when she went in between the truck and the trailer where she saw the back end of the fight.
According to Reece Guillot, when he approached Wayne on the farm property as Wayne was attempting to leave with the crawfish boat in tow, Wayne “ran [Reece] off the road.” Reece testified that he followed Wayne and witnessed Wayne run into Benjamin’s truck. Further, when Wayne arrived at his house with Reece following close behind him, Reece said that he parked right behind the |7trailer of the boat. According to Reece, Wayne then went after him “like a crazy man.” Reece testified that Wayne then threw the first punch and hit him in the ear, causing it to bleed. Reece claimed that he only threw one punch in self-defense.
Wayne’s wife, Susan, testified that she saw Reece “raise his fist,” but that there was a truck between the altercation and her view. After Susan saw Reece raise his fist, she saw no other swings either from Wayne or Reece between the first swing and the time that Wayne hit the ground.
Benjamin testified that after being informed that Wayne was taking the craw-fish boat from the farm property, he blocked the road in an attempt to get Wayne to stop. Benjamin claimed that Wayne rammed his truck to get by. Benjamin testified that he then followed Wayne and Reece to Wayne’s house. According to Benjamin, when he pulled up at Wayne’s house, he saw the brothers exiting their vehicles and saw Wayne running towards Reece. Benjamin further testified that when he reached them, the brothers were on the ground in front of Reece’s truck, behind Wayne’s truck, the trailer, and the crawfish boat. Benjamin testified that he did not see the punches that led to the brothers on the ground and only saw that his father had Wayne in a head lock and was “[j]ust slapping him with a worn out hand, tired man, tired old man on the ground.”
According to Wayne, he was intending to crawfish that year to supplement his income. He admitted, however, that he had yet to plant rice and therefore had not yet flooded the field for crawfishing, a time consuming process necessary for crawfish farming as acknowledged by all parties. Wayne stated that when he loaded up the crawfish boat on the farm property, he saw Reece coming very fast and knew there would be a confrontation. Wayne stated that he tried to avoid the inevitable and drove around Reece and headed to his own house. However, Reece ^followed right behind him. Travelling only a little faster than normal, Wayne called his wife and told her to call the police and tell them to meet him at his house. Benjamin then blocked the highway with his own truck. Wayne claimed that he drove off of the road and maneuvered around Benjamin, *847 striking the left bumper of Benjamin’s truck. According to Wayne, once at his house, Reece allegedly “rushed” towards him and threw the first punch, which landed on Wayne’s left eye. Wayne claims that he went down and did not throw one punch at his brother. He was told that Reece jumped on top of him and pummeled him until Reece tired of swinging, but Wayne has no direct recall of what happened after the first punch.
Louisiana has a comparative fault system.
In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
La.Civ.Code art. 2323(A).
 Comparative fault does not apply when one “consents” to a battery, however. The law of consent is well-established. Our supreme court stated, “Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances.” Cole v. State Dep’t of Pub. Safety & Corr., 01-2123, p. 11 (La.9/4/02), 825 So.2d 1134, 1142. Further, “When a person voluntarily participates in an altercation, he may not recover for the injuries which he incurs, |3unless force in excess of that necessary is used and its use is not reasonably anticipated.” Id. at 1143.
Even more relevant in this case, “The defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim.” Id. at 1142; see also Touchet v. Hampton, 06-1120 (La.App. 3 Cir. 2/7/07), 950 So.2d 895; Frank L. Ma-raist, H. Alston Johnson III, Thomas C. Galligan, Jr., & William R. Corbett, Answering a Fool According to His Folly: Ruminations on Comparative Fault Thirty Years On, 70 LA. L.REV. 1105, 1107 (2011). “When two parties expressly or impliedly agree to fight the consent of one is not vitiated merely because the other strikes the first blow.” Richard v. Mangion, 535 So.2d 414, 416-17 (La.App. 3 Cir.1988).
Wayne admitted that he had no immediate use for the boat, yet he went on the farm property that no longer belonged to him and took the boat anyway. Wayne also admitted that he knew the second that he started leaving the property with the crawfish boat and saw Reece coming towards him that “[tjhere’s going to be trouble.” He called his wife in route and requested that she call the police. Once arriving home with the boat in tow, Wayne voluntarily exited the vehicle. Had he wanted to avoid the altercation that he stated he knew was inevitable, he could have gone inside the house or remained in the vehicle and waited for the police to arrive. Furthermore, while there is conflicting testimony as to exactly where the actual fight took place, the evidence shows that at the very least, the brothers confronted each other near the rear of Wayne’s truck. Wayne would, have had to exit his truck and take steps to move in the direction of Reece, even if the exact number of steps he took is debated.
*848 | ,ftThere is little doubt that the record shows that Reece was wrong to follow Wayne to his house and confront Wayne in his own driveway, striking Wayne, jumping on top of Wayne, and continuing to strike him while he was down. Likewise, there is no doubt that Wayne was wrong to go to the farm property and take a crawfish boat for which he had no immediate use when Wayne knew full well that Easter week was the peak of crawfish season and the boat was needed by Reece for the harvest. After he took the boat and arrived at his house, Wayne could also easily have remained in his truck or entered his home when he arrived there. Instead, he walked (or ran) to the back of his truck and confronted Reece.
Thus, the record reflects that the jury had sufficient evidence on which to base its verdict that Wayne consented to the altercation. While it may be argued that Reece used excessive force when he jumped on top of Wayne, the weight of the evidence was that Wayne’s eye was injured by Reece’s first punch. Wayne claimed he had no memory of what happened after the first punch.
As previously discussed, Louisiana law is clear that when a party legally consents to an altercation, there is no basis for recovery for an intentional tort. The trial court gave the following instruction on consent:
In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct, and, in turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense.
Accordingly, if you find that the defendant committed a battery upon the plaintiff, but you also find that the plaintiff consented to the fight that produced the battery, then you must return a verdict for the defendant, unless you find that the force used by the defendant is not reasonably anticipated and is in excess of that necessary for self-defense.
(Emphasis added.) The jury verdict form had the following interrogatory:
| n(l) Did Wayne Guillot consent to being struck, hit, and/or punched by Reece Guillot?
_YES_NO
If “yes, ” please proceed to No. 6. If “no, ” please proceed to No. 2.
The foreman put an “X” in the blank in front of “YES.” No. 6 read:
(6) Please stated the percentages of fault stemming from each parties’ involvement in the automobile colli-. sion at issue:
Benjamin Guillot_%
Wayne Guillot_%
The foreman marked “100” behind Benjamin Guillot.
In his first assignment of error, Wayne asserts that there was “overwhelming testimony” that Reece was the sole aggressor. As stated above, when considering the testimony of the five adults present during the altercation, it is far from clear that Reece was the sole aggressor. Each person’s testimony differs. Most witnesses did not have a clear view of the fight after the first punch was thrown. The jury was present during the testimony of each witness and concluded based on all the evidence presented that Reece was not the sole aggressor and that Wayne consented to the fight, hence no recovery. Though we may disagree and may have decided the case differently had we been the fact-finder, our job is to examine the record to see if there is a reasonable basis for the jury’s conclusion. In doing so, we must also scrutinize the record to insure that no *849 error of law occurred that may have impacted the verdict.
Here, we find that the facts .were in dispute and it was within the jury’s discretion to find against Wayne, based on the law of consent. “[W]hen there are two permissible views of the evidence, the fact-finder’s choice between them |12cannot be manifestly erroneous.” Ardoin v. Firestone Polymers, L.L.C., 10-245, p. 6 (La.1/19/11), 56 So.3d 215, 219. We must find, under the law, that Wayne’s first assignment or error lacks merit.

Assignment of Error Two

The next question presented is whether there was an error of law that may have impacted the jury’s verdict. Here, we look to the propriety of the jury charges and whether any objections as to the law given by the judge to the jury were adequately preserved for our appellate review. In Wayne’s second assignment of error, he alleges that the trial court gave erroneous jury charges and used the wrong verdict form. Wayne argues on appeal that the jury charges and verdict form provided that consent was a complete bar to recovery, in direct contravention of the comparative fault laws of this state.
Louisiana Code of Civil Procedure Article 1793(C) provides, “A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objections.” (Emphasis added.) See Breaux v. La. Patient’s Comp. Fund, 12-878 (La.App. 3 Cir. 2/6/13), 2013 WL 456532 (unpublished opinion). In this case, Wayne’s attorney objected to the jury charges, stating:
We object to the removal of the proposed language in charges stating “When the defendant’s actions are intentional, any negligence on the part of the Plaintiff cannot be considered.” And we object to the exclusion of any similar language to that effect under Landry v. Bellanger, 851 So.2d. That case states that Civil Code Article 2323(C) is not applicable when the Plaintiffs actions were intentional as opposed to merely negligent. This case does not hold, as defendant suggests, that 2323(C) is not applicable in battery cases.
Furthermore, there are multiple actions in this case which the jury may consider negligent as opposed to intentional and it would be | ilegal error for the jury to be allowed to consider any actions which were not intentional, but merely negligent.
“Intent” means that the actor either consciously desires the physical result of his actions; or knows that the result is substantially certain to follow from his actions. Defendants will undoubtedly argue that certain actions of Wayne were provocative and should serve to reduce their percentage of fault. However, should, the jury decide that Wayne not desire or be substantially certain that an actual physical fight would occur as a result of his actions, then they are merely negligent and it is legal error for the jury to consider them. And it is legal error not to charge the jury on these points of law.
Wayne’s counsel did not specifically request that the comparative fault language be added to the jury instructions, but instead argued that the court should instruct the jury that it could not consider any negligent conduct on behalf of Wayne. Considering counsel’s confusing objection to the jury instructions and our reading of Landry v. Bellanger, 02-1443 (La.5/20/03), 851 So.2d 943, we will again address Wayne’s concerns regarding the applicabil *850 ity of comparative fault to the law of consent.
In Landry, our supreme court dealt with the issues of self-defense, consent, and the aggressor doctrine and how each is affected by comparative fault. Unlike self-defense and consent, the supreme court in Landry held that the aggressor doctrine is a victim-fault defense baring recovery, a result that comparative fault was meant to do away with. Id. at 952. The supreme court held:
[T]he fault of all persons causing or contributing to injury, regardless of the basis of liability, is to be determined, and, if a negligent Plaintiff is injured as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced by his percentage of fault.
Id. at 953. See also La.Civ.Code art. 2323. Further, “it is appropriate to consider each party’s respective fault when a matter involves intentional tortfeasors.” Id. at 954. However, in Landry, the supreme court went on to state, “consent means the 114defendant did not commit a tort.” Id. at 952. The supreme court then quoted with approval from a well-written legal treatise, “On this analysis the percentage-fault approach should replace both the aggressor doctrine and the mitigation doctrine, while leaving the full defenses of consent and pnvilege intact.” Id. (emphasis added) (quoting David Robertson, The Louisiana Law of Comparative Fault: A Decade of Progress, 1 Louisiana Practice Series 5 (Louisiana Judicial College, 1991)). Our reading of Landry is that the supreme court specifically held that comparative fault does apply, except in cases involving the defense of consent, or the existence of a privilege, like self-defense.
There is a sufficient basis in the record for the jury to have concluded that Wayne consented to the altercation as soon as he exited his vehicle and took steps in Reece’s direction. Arguably, he consented when he first took the boat and told his wife to call the police, “[t]here’s going to be trouble.” Wayne expressed consent with his movements toward Reece and his prior knowledge that trouble was on the horizon, which, if found to be the case factually, operated as a complete bar to potential recovery for his damages. See Landry, 851 So.2d 943; Touchet, 950 So.2d 895. Thus, in line with Landry, the trial court did not . err in instructing the jury that “if you find that the defendant committed a battery upon Wayne, but you also find that Wayne consented to the fight that produced the battery, then you must return a verdict for defendant.”
While admittedly this jury instruction may be yet another step away from the pure comparative fault doctrine that the Louisiana Legislature had adopted, it is a step we must follow, at least under our supreme court’s interpretation of the defense of consent to an intentional battery as expressed in Landry.
| lfiMoreover, we could find no objection to the jury verdict form in the record. Failure to object to the verdict form operates as a bar to a claim that the verdict form was erroneous. La.Code Civ.P. art. 1793. While we may disagree with the final verdict in this case, especially since both brothers seemed to have taken the law into their own hands, we find that there was no error of law to which a valid objection had been filed that impacted the verdict. Each side had a good attorney arguing their respective case. The judge properly charged the jury. The jury had a very difficult job and had to weigh conflicting evidence. Like the trial judge and jury, we must follow the law as interpreted by our supreme court. We find that Wayne’s assignment of error two also *851 lacks merit based on the defense of consent.
CONCLUSION
Under the law as interpreted by our supreme court in Landry, we affirm the jury’s verdict that Wayne Guillot consented to the altercation and that the trial court did not err in instructing the jury that a finding of consent was a complete bar to recovery. The judgment of the trial court is affirmed. All costs of this appeal are assessed to Wayne Guillot.
AFFIRMED.
COOKS, J., dissents and assigns written reasons.
AMY, J., concurs and assigns reasons.

. Wayne claimed at trial that he owned the boat and produced a cancelled check to help buttress his claim. However, there was evidence that the boat had always been used in the partnership and, under the law, was still part of the partnership property. When leaving a partnership for any reason, the former partner is not entitled to an interest in the assets of the partnership, but is only entitled to be paid the equal value of the partner's former interest in the property. See La.Civ. Code art. 2823.

. Guillot v. Guillot, 12-109 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212.