345 So.2d 1216 (1977)
Duane ANDREPONT
v.
James NAQUIN et al.
No. 11254.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
*1217 Max G. LaBranche, Baton Rouge, of counsel, for plaintiff appellant.
John S. White, Jr., Baton Rouge, of counsel, for defendants appellees.
*1218 Before LANDRY, EDWARDS and COLE, JJ.
COLE, Judge.
The plaintiff-appellant, Duane Andrepont, brought suit against the defendant-appellee, James Naquin, for a battery allegedly committed on April 12, 1974, at approximately 11:30 P.M., in which the plaintiff sustained personal injuries. The jury held for the plaintiff and against the defendant and awarded $600 in damages. The plaintiff appeals from this judgment claiming that the amount awarded was inadequate. The defendant answers the appeal disclaiming any liability to the plaintiff.
On the night of April 12, 1974, the plaintiff and several of his friends, all approximately seventeen to eighteen years old and high school seniors, went to an establishment called "The Fooseball Center" on Florida Boulevard in Baton Rouge. This commercial establishment was in the nature of a pool or game hall which served beer and catered to the young. Plaintiff and his friends were frequent customers at the establishment. The cause of the altercation giving rise to this suit was never understandably explained at trial. It appears from the record that the participants did not really know, nor can they coherently explain, the cause of the incident. Apparently, the fight was precipitated by a previous altercation the night before involving the defendant (and his friends) and a friend or acquaintance of the plaintiff (and his friends). In any event, on the night of the incident the plaintiff and his four companions were outside of The Fooseball Center when a car load of boys rode by shouting obscenities at the plaintiff's group and urging the plaintiff's group to follow the car to a fight. The plaintiff and several companions got into a car and commenced a high speed pursuit of the vehicle. The lead vehicle was unable to maintain control in a curve and flipped over in a ditch. The car in which the plaintiff was riding stopped at the scene and a short fight ensued. After the plaintiff's group had evidently gotten the best of the battle, the group from the disabled vehicle told the plaintiff's group that if they wanted to continue fighting they could go to Shamrock Acres Subdivision on the Comite River.
The plaintiff and his companions then drove to the designated location. On a deserted cul-de-sac surrounded by a mostly wooded area the plaintiff's group found a car in the middle of the neutral area in the circle with five or six youths standing beside the car. This group was obviously waiting for and anticipating the altercation that was to follow. Allies of the plaintiff's group began arriving in other cars shortly thereafter. Evidently words were exchanged (the nature of which one can only leave to conjecture) and a fight ensued.
The plaintiff claims that he saw someone of undetermined identity chasing and hitting a compatriot, one Woody Day, with a baseball bat and that he and others jumped on the back of the assailant causing him to drop the bat. After a scuffle, the plaintiff stood up and was met with a blow from the bat across his mouth. The plaintiff claims that he did not see who hit him. However, one of the plaintiff's friends who was close-by asserts that he looked as soon as he heard the blow and saw the defendant holding the bat.
The defendant denies that he struck the plaintiff in the mouth with a baseball bat. Instead, he claims to have been the one chasing and hitting Woody Day with the bat. Incidentally, Day suffered a fractured elbow from the blows delivered. The defendant pled guilty to criminal charges arising from the attack upon Woody Day.
This case was submitted to the jury on written interrogatories, together with appropriate forms for a general verdict. The only fact issues to be resolved by answers to the interrogatories, and which were presumably necessary to a verdict, were whether the defendant caused the injuries to the plaintiff in a fight with a baseball bat; whether the force used by the defendant was reasonably necessary to protect himself against threatened injury; and whether the plaintiff was a willing participant *1219 in a physical fight "involving a weapon which could cause injury." The fourth and last interrogatory called for a quantum determination which, under the format used, would have been tantamount to a verdict in favor of the plaintiff. The instructions were not to answer this last interrogatory if the jury answered "yes" to the preceding interrogatory concerning the plaintiff's willing participation.
The jury found that the defendant did cause the injuries to the plaintiff in a fight with a baseball bat; that the force used by the defendant was not reasonably necessary to protect himself against threatened injury; and that the plaintiff was a willing participant in a fight involving a weapon which could cause injury. Having found that the plaintiff was a willing participant, the jury, in accordance with the instructions on the interrogatory form, did not answer the fourth interrogatory establishing quantum. However, it returned a general verdict in favor of the plaintiff for the sum of $600.
The court, in its charge to the jury, included instructions on the affirmative defense of assumption of risk. The jury was explicitly told that it must determine whether the defendant proved that the plaintiff relieved the defendant of the responsibility for the harm caused to the plaintiff by assuming the risk of the harm suffered. In the main body of the charge, the court instructed: "If you find that plaintiff assumed the risk of harm that happened to him then you must render a verdict for the defendant." Later, the court summarized:
"* * * The plaintiff has the burden of proving all of the essential elements of his case by a preponderance of the evidence. He must demonstrate that the injury which he says he suffered was in fact caused by the conduct of the defendant; that the conduct of the defendant was below the standards which I have told you applied to the defendant's conduct; and that there was actual damage to the plaintiff's person or his property. If you're satisfied that the plaintiff has established these three elements and that the defendant has failed to establish that the plaintiff assumed the risk of injury then you should return a verdict for the plaintiff. If on the other hand, plaintiff has failed to establish these elements or if the defendant has proved that plaintiff did assume the risk of injury then you should return a verdict for the defendant. * * *" (Emphasis supplied)

LIABILITY
The factual dispute as to whether or not the defendant delivered the blow to the plaintiff can only be resolved on the basis of an evaluation of the credibility of the witnesses. After a review of the record, we do not find the jury's determination that the defendant struck the plaintiff to be manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Nor does the record permit this Court to assess manifest error with respect to the jury's finding that the force used by the defendant was not reasonably necessary to protect himself against threatened injury. As a reviewing court, we are mandated to give great weight to the factual conclusions of the trier of fact and where, as here, there is conflict in testimony, we must not disturb inferences of fact even though we may feel that our own evaluations and inferences are as reasonable. Canter, supra.
In the alternative, the defendant asserts the defense of assumption of risk or, more properly in cases of intentional torts, consent. The defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim. Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances.
When a person voluntarily participates in an altercation, he may not recover for the injuries which he incurs, unless force in excess of that necessary is used and its use is not reasonably anticipated. White v. Gill, 309 So.2d 744 (La.App. 4th Cir. 1975); Buchert v. Metropolitan Life Insurance *1220 Company, 219 So.2d 584 (La.App. 4th Cir. 1969). The use of unnecessary and unanticipated force vitiates the consent. For example, when a party voluntarily engages in a fist fight and his adversary suddenly reveals a concealed or dangerous weapon, he does not necessarily consent to the use of such an instrument.
This concept is similar to a situation in which a person responds to an aggressive act or seeks to defend himself from real or reasonably apparent attacks by others but uses more force than is reasonably necessary to repel the aggression or apparent aggression. In such situations the use of force in excess of what is necessary results in liability for injuries caused by the employment of such unnecessary force. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (La.1969); Watts v. Aetna Casualty & Surety Company, 309 So.2d 402 (La.App. 2nd Cir. 1975).
In the instant case it is clear that the plaintiff voluntarily consented to engage in a fist fight with the defendant and his friends. The plaintiff even went to great lengths to seek out such an altercation. However, it is equally apparent that the force employed by the defendant was not used in defense, was in excess of what was reasonably necessary to repel the advances of the plaintiff or his group, and was an implementation of force to which the plaintiff did not consent.
Defendant argues that the jury's determination that plaintiff willingly participated in a fight involving a weapon which could cause injury equates to consent or assumption of risk and bars recovery for his injuries. It is urged that this finding of the jury is inconsistent with the general verdict in favor of plaintiff, thus invoking the application of the third paragraph of Article 1812 of the Louisiana Code of Civil Procedure, which provides:
"When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial."
The alleged inconsistency between the answer to the interrogatory dealing with willing participation and the general verdict was called to the attention of the trial court which declined to take any action. The trial judge commented:
"I feel the question may be somewhat ambiguous, and I'm not going to order the jury back or do anything about it. I don't think it's necessarily inconsistent, and we will sign the judgment _____."
We cannot agree with defendant that this treatment of the issue by the trial court necessarily constitutes error. Valid arguments can be made both for and against the point. It appears that in answering the interrogatories the jury knowingly made a determination that the plaintiff assumed the risk of the injuries sustained. However, it is just as logical to say that the jury, in response to the explicit instructions as to this defense, rejected the defense by returning a general verdict for the plaintiff. It is also logical to argue that the jury construed the interrogatory in relation to the charge hereinafter discussed dealing specifically with mitigation of damages. As noted by the trial court, the interrogatory, especially when considered within the context of the total instructions to the jury combined with the documents containing the interrogatories and verdicts, is somewhat ambiguous. The subject interrogatory is unclear as to whether the weapon alluded to was a baseball bat in the hands of the defendant at a time when plaintiff knowingly engaged him in combat or whether it was that or some other weapon being used in the general melee. The jury may have felt that while the plaintiff knew there was a weapon in the crowd and he willingly participated in the free-for-all, he did not understand and accept the risk of being hit in the mouth with a baseball bat. The determination of whether a plaintiff has assumed a particular risk is made by subjective inquiry. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 *1221 So.2d 133 (1971). Thus, it is impossible for us to conclude that the jury in this case returned a verdict that is necessarily inconsistent with its answer to the interrogatory.
Conceding, for the sake of argument, that the general verdict is inconsistent with the answer to the interrogatory, the entire record is before us and it is our duty to render a proper judgment. La.-C.C.P. art. 2164. See, also, Gonzales v. Xerox Corporation, 320 So.2d 163 (1975), and the authorities therein cited. In our view, a proper judgment requires that we affirm the trial court on the question of liability.

DAMAGES
The plaintiff contends that the jury erred in awarding only $600 in damages. The plaintiff suffered a segmental fracture of the upper jaw beneath the nose. The fractured segment containing four upper teeth was freely movable as a mass. The trauma caused the abscess of two upper teeth and one lower tooth. Four teeth suffered fractures, the extent of which was not shown at trial.
The plaintiff was treated at the emergency room of the Baton Rouge General Hospital by Dr. Rivers Wall, an oral surgeon. Dr. Wall applied a local anesthetic and attached a fracture bar to the upper jaw by passing a wire between all of the upper teeth to anchor it. Lacerations of both the upper and lower lips were debrided and sutured. Dr. Wall's total bill for the emergency treatment and subsequent visits was $285. The emergency room charged $14.45.
Dr. Wall suggested that the plaintiff see a dentist for care of the affected teeth. A subsequent visit to Dr. Wall revealed that three teeth had lost their vitality and would eventually require root canal treatment at approximately $90 per tooth for a total of approximately $270. Dr. Wall also testified that the crowns of the four fractured teeth would need future restorative work to protect them. However, no proof of the cost of such procedures was offered. The total amount proven for past and future medical expenses amounts to approximately $570.
The trial court gave the following jury instruction which was requested by the defendant and to which the plaintiff did not object:
"* * * In a suit for assault and battery, plaintiff's actions before and during injury with which plaintiff was connected may be shown in mitigation or reduction in damages. Examples of such action of the plaintiff which may be considered in mitigating or reducing damages are the use by the plaintiff of loud and abusive language, provocation by plaintiff, insolence, insubordination, and threats of personal violence, if any, and where voluntary engagement and mutual combat amounts to consent of plaintiff to such fighting. * * *"
It is obvious that the jury heeded this instruction and chose to adjust the award of damages because of the conduct of the plaintiff in relation to the altercation in which he received his injuries. The plaintiff cannot now assign as error the giving of the instruction. La.C.C.P. art. 1793.
In Morneau v. The American Oil Company, 272 So.2d 313 (La.1973), in citing a long line of cases, the Supreme Court recognized as a well-established rule that although provocation by words alone does not justify a battery, it may be considered in the mitigation of damages.
We are unaware of a concise standard for deciding when and how much damages may be mitigated. See Watts v. Aetna Casualty & Surety Company, supra at 409. However, we see no reason why, a fortiori, conduct or action which helps to create circumstances giving rise to the injury but which does not justify the actual battery, should not be considered in the mitigation of damages. Support for this view, at least inferentially, is set forth in Louisiana Civil Code Article 2323 which provides:
"The damage caused is not always estimated at the exact value of the thing destroyed or injured; it may be reduced according to circumstances, if the owner of the thing has exposed it imprudently."
*1222 In the instant case the conduct of the plaintiff was reminiscent of that of the plaintiff in Foster v. Barker, 306 So.2d 910 (La.App. 1st Cir. 1974), which led this Court to assert:
"From our review of the evidence, we concur in the finding that the plaintiff went to defendant's apartment and verbally abused him and threatened him with physical harm. In other words, he went there looking for trouble and found it. The trial judge was, therefore, justified both in law and fact in mitigating damages." (306 So.2d at 913Emphasis supplied)
The record before us establishes without question that plaintiff sought and found trouble. Once tauntingly provoked by obscene verbal challenges, he pursued and caught his antagonists. Not being satisfied with one physical encounter in which he apparently prevailed, he then elected to continue the fracas at another site. We do not, however, view the problem as one solely concerned with mitigation of damages. While mitigation of damages is a valid consideration for the jury, it is still necessary to determine whether the jury abused its "much discretion" in making the award. La.-C.C. art. 1934(3). It can hardly be said that a general verdict of $600 is proper for the physical injuries sustained by plaintiff, including the permanent damage to the plaintiff's teeth, the considerable pain and suffering he experienced, and for past and future medical expenses of $570.
A review of similar injuries in other cases strongly suggests that without the element of mitigation, plaintiff's total damages would normally be in the range of $4,000. Compare Hernandez v. Toney, 289 So.2d 318 (La.App. 1st Cir. 1973), a case in which the injuries were much more substantial. Following the rationale of Foster v. Barker, supra, we conclude that, properly mitigated, we would have awarded the plaintiff approximately $2,500. However, it is not appropriate for us simply to decide that $2,500 is proper and then substitute that sum for the amount awarded by the trier of fact. Consequently, we disturb the award below only to the extent of raising it to the sum of $1,500 which we deem to be the lowest mitigated point that is reasonably within the discretion afforded the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Therefore, for the foregoing reasons, the judgment of the trial court is amended to increase the award to the plaintiff from $600 to $1,500, and in all other respects, said judgment is affirmed. The costs of this appeal are assessed to the appellee.
AFFIRMED IN PART, AMENDED AND RENDERED.