# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #031

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2025** are as follows:

**PER CURIAM:**

*2024-C-01043*            *JUSTIN IRWIN  VS.  JOHN BRADLEY BRENT (Parish of Orleans Civil)*

REVERSED. SEE PER CURIAM.

Retired Judge Richard Anderson, appointed Justice ad hoc, sitting for Justice Griffin, recused.

Weimer, C.J., dissents and assigns reasons.
McCallum, J., concurs in the result and assigns reasons.
Guidry, J., dissents for the reasons assigned by Chief Justice Weimer. Cole, J., concurs in the result only.

SUPREME COURT OF LOUISIANA

No. 2024-C-01043

JUSTIN IRWIN

VS.

JOHN BRADLEY BRENT

On Writ of Certiorari to the Court of Appeal, Fourth Circuit,
Parish of Orleans Civil

PER CURIAM[1]

In this intentional tort action, we must decide whether the court of appeal erred in reversing the judgment of the district court which dismissed plaintiff's suit with prejudice. For the reasons that follow, we conclude the court of appeal applied an incorrect standard of review. Finding no manifest error in the district court's decision, we reinstate the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Justin Irwin, filed this intentional tort action against defendant, John Bradley Brent. Essentially, plaintiff alleged that he rented an apartment from defendant, and an altercation arose between the parties over plumbing repairs. During the altercation, plaintiff pushed defendant, and defendant responded by punching plaintiff with enough force to render plaintiff unconscious. Plaintiff alleged he sustained serious injuries because of the battery defendant perpetrated upon him.

The matter proceeded to a bench trial before the district court.[2] After hearing testimony from plaintiff, defendant and two witnesses, the district court rendered

---

[1] Retired Judge Richard Anderson, assigned as Justice ad hoc, sitting for Griffin, J., recused.

[2] Following the presentation of plaintiff's evidence, defendant filed a motion for involuntary dismissal. The district court granted the motion and dismissed plaintiff's suit with prejudice. (continued…)

judgment dismissing plaintiff's suit with prejudice. In its "Judgment with Reasons," the district court concluded that plaintiff was 100% at fault for the altercation, and defendant's response was reasonable under the facts. The court stated, in pertinent part:

> For these reasons, this Court finds Plaintiff consented to the battery committed by Defendant based on the reasonable appearances drawn from the testimony and evidence. This Court equally finds that the mere spoken exchange of words between Plaintiff and Defendant were insufficient to negate Plaintiff forcefully pushing Defendant. Evidence and testimony also fails [sic] to support the contention that Plaintiff pushed Defendant in a forceful manner as an exercise of his right to defend his person or property. Evidence and testimony does support a finding, however, that Plaintiff pushing Defendant in a forceful manner was sufficient, under reasonable appearances, to provoke the physical retaliation distributed by Defendant.
>
> * * *
>
> [I]t is undisputed that Defendant only struck Plaintiff one time, Plaintiff testified that he initially believed Defendant had pushed him in the same manner Plaintiff pushed Defendant. Plaintiff further testified he was unaware Defendant punched him in the face and remained unaware until Defendant informed Plaintiff what he had actually done. This testimony speaks to the reasonableness and use of force distributed by Defendant. It is also undisputed that immediately after striking Plaintiff, Defendant ceased all further contact. Defendant also testified that he was shocked by Plaintiffs [sic] actions and did not expect nor did he foresee the push. For these reasons, this Court opines, Defendants [sic] actions were reasonable under the circumstances drawn from the evidence and testimony presented. As such Plaintiff's claims against Defendant are dismissed with prejudice, at Plaintiff's costs.

Plaintiff appealed. The court of appeal reversed. In its opinion, the court of appeal found the district court's reasoning was internally inconsistent and legally erroneous. The court of appeal explained the district court found defendant did not commit a battery as plaintiff consented to the altercation, but also found the battery

---

Plaintiff appealed the dismissal. The court of appeal reversed and remanded for further proceedings, finding the trial court acted prematurely in dismissing the case without taking additional evidence. *Irwin v. Brent*, 2022-0063 (La. App. 4 Cir. 9/14/22), 348 So. 3d 835.

was justified because defendant's response was reasonable under the facts.[3] It determined this legal error interdicted the fact-finding process requiring a de novo review. Following its de novo review of the record, the court of appeal determined that defendant was 60% liable for the battery committed on plaintiff. It awarded plaintiff general damages in the amount of $33,000.00 plus judicial interest from the date of judicial demand. *Irwin v. Brent*, 2023-0475 (La. App. 4 Cir. 7/19/24) ___ So. 3d ___.

Upon defendant's application, we granted certiorari to consider the correctness of this decision. *Irwin v. Brent*, 2024-1043 (La. 11/27/24), 396 So. 3d 448.

## DISCUSSION

A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Kinnett v. Kinnett*, 2020-01134 (La. 10/10/21), 332 So. 3d 1149, 1154. However, where the trial court makes a legal error that interdicts the fact-finding process, the manifest error standard is no longer applicable, and the appellate court may conduct an independent de novo review of the record. *Hicks v. USAA General Indemnity Co.*, 2021-00840 (La. 3/25/22), 339 So. 3d 1106, 1115. A legal error occurs when a trial court applies incorrect principles of law, and such errors are prejudicial. *Evans v. Lungrin*, 1997-0541 (La. 2/6/98), 708 So. 2d 731, 735. Generally, when the trial court makes errors that are prejudicial, such that they materially affect the outcome of the trial and deprive a party of substantial rights, and if the record is otherwise complete, the appellate court will conduct its own de novo review of the record. *Melerine v. Tom's Marine & Salvage, LLC*, 2020-00571 (La. 3/24/21), 315 So. 3d 806, 822.

---

[3] The court of appeal also found the district court's judgment was inconsistent insofar as it found defendant was entitled to civil immunity under La. R.S. 9:2800.19. However, an examination of the district court's reasons for judgment clearly reveals the district court found La. R.S. 9:2800.19 "does not apply."

3

Applying these precepts to the case before us, we do not find the district court applied any incorrect principles of law or made any prejudicial errors of law which would deprive the parties of any substantive rights. The district court essentially found plaintiff consented to the battery, and defendant's actions in response were not unreasonable. This analysis is consistent with comparative fault principles as enunciated in *Landry v. Bellanger*, 2002-1443 (La. 5/20/03), 851 So. 2d 943. In the absence of any legal error on the part of the district court, the court of appeal erred in performing a de novo review of the record and failing to give deference to the district court's factual findings.

The correct standard of review is set forth in *Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882-83 (La. 1993), in which we explained:

> Nevertheless, **the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.** *See generally*, *Cosse v. Allen–Bradley Co.*, 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). **Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.** *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, 549 So.2d at 844–45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Housley v. Cerise*, 579 So.2d 973 (La.1991) (quoting *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990)).

> This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).
>
> **Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong**. Id. [emphasis added].

The record of the case before us reveals the district court was presented with two different versions of the events surrounding the altercation. After hearing the testimony of the witnesses, the district court concluded defendant's version was more credible. The district court's decision to accept defendant's version of events and assess 100% of the fault to plaintiff is supported by appropriate evidence in the record and is not unreasonable.

Therefore, we cannot say the district court's decision is manifestly erroneous. The court of appeal erred in finding otherwise.

## DECREE

For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court is reinstated in all respects.

# SUPREME COURT OF LOUISIANA

## No. 2024-C-01043

## JUSTIN IRWIN

## VS.

## JOHN BRADLEY BRENT

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit,*
*Parish of Orleans*

**WEIMER, C. J.**, dissenting.

Because I would affirm the decision of the appellate court, I respectfully dissent from the majority opinion in this matter.

### FACTUAL AND PROCEDURAL HISTORY

In January of 2018, plaintiff, Justin Irwin, was renting an apartment from defendant, John Bradley Brent, when the pipes froze and burst due to low winter temperatures. Defendant instructed plaintiff not to repair the pipes on his own. Nonetheless, after approximately two weeks without water, plaintiff had the pipes repaired by a plumber. Later that same day, defendant and his friend, Andrew Chevalier, went to plaintiff's apartment to finish making the repairs. Plaintiff was not home when they arrived. When plaintiff returned to his home at the apartment, a heated verbal argument ensued between plaintiff and defendant about the repairs plaintiff had performed and unpaid rent. The parties were "face-to-face" and "toe-to-toe." The argument continued until plaintiff (with two open hands on defendant's chest) forcefully pushed defendant away. Defendant claimed when he was touched by plaintiff, he "blacked out and due to adrenaline, shock, and fear" and "immediately hit plaintiff one time in the face with a closed fist" rendering him unconscious. Defendant assisted plaintiff from the ground and into his apartment

before taking plaintiff to the hospital. Plaintiff's injuries included a concussion with a loss of consciousness, a lip laceration, closed fracture of the nasal bone, maxillary sinus fracture, and whiplash to his neck. For 22 months, plaintiff received medical treatment for his injuries and suffered numbness, headaches, neck pain, sleep disruption, and vision problems.

Plaintiff filed suit against defendant, alleging that defendant committed a battery against him. In his answer, defendant urged that La. R.S. 9:2800.19 bars plaintiff from recovering damages as plaintiff was the aggressor, in that plaintiff first pushed defendant, and defendant's actions were in self-defense. Defendant also filed a reconventional demand, seeking to recover for unpaid rent.

After the trial of this matter, the trial court found that La. R.S. 9:2800.19, which it referred to as the aggressor doctrine, did not apply in this case. After acknowledging that "comparative fault law will govern any findings of this Court," the trial court considered whether plaintiff consented to the battery:

> to determine whether Plaintiff's conduct was of such provocative nature as to render it the sole cause of his claimed injuries, this Court must determine whether Plaintiff "consented" to said battery. "Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances." When a person voluntarily participates in an altercation, he may not recover for the injuries which he incurs, unless force in excess of that necessary is used and its use is not reasonably anticipated; the use of unnecessary and unanticipated force vitiates the consent. [Footnotes omitted.]

Accepting the testimony of defendant and Chevalier,[1] the trial court found that plaintiff and defendant were engaged in a heated face-to-face exchange when plaintiff forcefully pushed defendant. In turn, defendant punched plaintiff one time in the face. According to the trial court, "the mere spoken exchange of words between Plaintiff and Defendant were insufficient to negate Plaintiff forcefully pushing Defendant"; "Plaintiff['s] pushing [of] Defendant in a forceful manner was sufficient, under reasonable appearances, to provoke the physical retaliation distributed by Defendant." As noted in the majority opinion, the trial court further found that defendant's punch was a reasonable response to plaintiff's push, stating:

> [I]t is undisputed that Defendant only struck Plaintiff one time, Plaintiff testified that he initially believed Defendant had pushed him in the same manner Plaintiff pushed Defendant. Plaintiff further testified he was unaware Defendant punched him in the face and remained unaware until Defendant informed Plaintiff what he had actually done. This testimony speaks to the reasonableness and use of force distributed by Defendant. It is also undisputed that immediately after striking Plaintiff, Defendant ceased all further contact. Defendant also testified that he was shocked by Plaintiff[']s actions and did not expect nor did he foresee the push.

---

[1] The trial court, which found plaintiff's testimony to be inconsistent, made the following pertinent factual findings:

- Plaintiff arrived to the property at issue after Defendant and Chevalier arrived to fix the pipe;
- Defendant approached Plaintiff one time at the back of the property toward the shed and steps where Defendant had been underneath the house;
- Defendant did not chase Plaintiff and Defendant did not follow or "stalk" plaintiff;
- Defendant was angry because he, as the Landlord, directed Plaintiff, as the Tenant, to refrain from fixing the pipes or hiring his own plumber to fix the pipes;
- Defendant was also angry because Plaintiff failed to pay rent;
- Plaintiff was angry because he did not have access to water due to the broken pipe;
- Plaintiff and Defendant were standing face-to-face and toe-to-toe with one another while exchanging words;
- Plaintiff and Defendant asked one another, on more than one occasion, to get out of one another's face and both refused to do so and kept exchanging heated words;
- Plaintiff passed his front door and walked to his back door with Defendant;
- At no time during the altercation did defendant prevent plaintiff from entering his house through the front or back door of the property;
- At no point during the word exchange did defendant raise his hands toward Plaintiff;
- Plaintiff pushed defendant in his chest with two open hands in a forceful and hostile manner;
- Immediately following this push, Defendant punched plaintiff with his right hand in the face; and
- Defendant only struck plaintiff one time, did not kick him while he was on the ground, or engage in any other violent physical contact with Plaintiff after the initial punch.

3

**Irwin v. Brent**, 24-01043 (La. 5/9/25), slip op. at 2.

In accordance with these findings, the trial court concluded that based on the reasonable appearances drawn from the evidence, plaintiff consented to the battery committed by defendant. Fault was allocated 100 percent to plaintiff and 0 percent to defendant. Plaintiff's claims were dismissed with prejudice, and defendant's request for attorney fees and unpaid rent were denied.

On appeal, the appellate court majority explained that the trial court "found Plaintiff was barred from recovery because: (1) Defendant did not commit a battery as Plaintiff consented to Defendant's violent conduct, thus failing to prove a *prima facie* case of battery; and (2) Defendant committed a battery upon Plaintiff but it was deemed justified on the grounds the Defendant's violent response was reasonable, thus granting him civil immunity under La. R.S. 9:2800.19." **Irwin v. Brent**, 23-0475, p. 6 (La.App. 4 Cir. 7/19/24), 401 So.3d 742, 749. According to the appellate court majority, the trial court's holdings on "consent" and "justifiable battery" were contradictory, demonstrating a misapplication of the law and mandating a *de novo* review of the record. Citing **Landry v. Bellanger**, 02-1443 (La. 5/20/03), 851 So.2d 943, the court of appeal majority explained:

> We find that the district court's dual findings on "consent" and "justifiable battery" are inherently contradictory and demonstrate a conflation of legal analyses and misapplication of the law, particularly in light of the precedent set by the **Landry** case. **Landry** emphasized the necessity of a comparative fault analysis rather than an absolute bar on recovery under the traditional aggressor doctrine. In **Landry**, the Court clarified that while a plaintiff's provocative behavior might influence the fault allocation, it does not automatically exonerate the defendant from liability. "[A]ny provocative or aggressive conduct on the part of the plaintiff should be incorporated into the allocation of fault by the trier of fact." This marked a departure from the previous doctrine where a plaintiff's initial aggressive action would categorically preclude recovery. The **Landry** case explained that when the defendant does not enjoy any qualifying privilege or immunity, the courts must perform a comparative fault analysis.

4

The district court's decision that completely barred Plaintiff's recovery and failed to conduct a comparative fault analysis runs contrary to the directives established in **Landry**, leading to substantial legal and factual errors necessitating a reversal and *de novo* review. The incorrect overlapping of legal analyses by the district court resulted in a legal error that significantly impacted the fact-finding process. The district court committed a legal error in its application of "consent" and in its finding that Plaintiff did not establish a *prima facie* case of battery because he consented to Defendant's violent response. We also find error in the district court's conclusion that Defendant's use of force was reasonable, triggering Section 9:2800.19 Immunity that barred Plaintiff from any recovery.

Given these errors in interpreting "consent" and assessing reasonable force, we are compelled to undertake a *de novo* review of the interdicted findings and perform a comparative fault analysis. This standard allows the appellate court to review the evidence independently and render a judgment based on a comprehensive assessment of the record.

**Irwin**, 23-0475 at 7-9, 401 So.3d at 749-51 (internal citations omitted).

Based on a *de novo* review of the record, the court of appeal majority found comparative fault applied because plaintiff proved that he did not "'consent' to the escalation to physical violence, and Defendant's response was not justifiably proportionate." **Irwin**, 23-0475 at 9, 401 So.3d at 751. The appellate court stated:

We find that the district court erred in its application of the laws regarding "consent" in holding that Plaintiff consented to the battery by "Plaintiff pushing Defendant in a forceful manner ... to provoke the physical retaliation distributed by Defendant." Plaintiff and Defendant did not anticipate that their altercation would lead to a physical fight, they did not arrive at the property to fight, and they had no previous communications about a fight taking place. Unlike the plaintiff in **Guillot**[ **v. Guillot**, 14-364 (La.App. 3 Cir. 12/23/14), 161 So.3d 841,] and **Richard**[ **v. Mangion**, 535 So.2d 414 (La.App. 3 Cir. 1988)], neither Plaintiff nor Defendant entered into the altercation knowing that there would be a physical or violent altercation that would result in serious bodily injury.

The evidence in the record does not support the district court's conclusion that Plaintiff consented to the battery committed by Defendant. At no time during the heated verbal exchange did Plaintiff threaten to harm Defendant or invite or encourage him to engage in a physical altercation. Plaintiff shoved Defendant to distance himself from Defendant in order to enter his apartment; no evidence was

presented that Plaintiff intended to engage in a violent physical altercation with Defendant. Plaintiff's attempt to retreat from the confrontation contradicts the notion that he voluntarily participated in a physical altercation with Defendant. Plaintiff proved that he did not voluntarily participate in the altercation and did not reasonably anticipate the extent of force used by Defendant.

The district court erred in conflating issues and continued to apply principles and erroneous legal analyses associated with the former aggressor doctrine, which has been ruled contrary to Louisiana's tort system in **Landry**. We find that Plaintiff proved a *prima facie* case of battery as he did not "consent" to the battery.

**Irwin**, 23-0475 at 12-13, 401 So.3d at 753.

Similarly, the court of appeal majority found the physical force used against plaintiff was unreasonable under the circumstances;[2] thus, defendant's self-defense claim under La. R.S. 92800.19 statute failed. As a result, it found defendant liable to plaintiff for battery. **Irwin**, 23-0475 at 18, 401 So.3d at 756.

The appellate court majority observed that "the factors to [be] consider[ed] in allocating fault in intentional tort battery cases" were identified in **Lombard v. Nobre**, 23-0746, p. 14 (La.App. 4 Cir. 6/18/24), 398 So.3d 1, 13-14. The **Lombard** court recognized this court's reiteration in **Tisdale v. Hedrick**, 22-01072 (La. 3/17/23), 359 So.3d 484, of the factors to be considered in allocating fault, in pertinent part stating:

---

[2] As support for such conclusion, the court of appeal majority stated:

> Plaintiff and Defendant were long-time friends without any history of adversity and were not in an environment conducive to unexpected behaviors, such as a bar room encounter by strangers. Moreover, Defendant sustained no injury from Plaintiff's push. Plaintiff had distanced himself from Defendant by pushing him. By Defendant's own account, Plaintiff's push "made [Defendant] step back." Plaintiff had turned away from Defendant to go inside his apartment when Defendant struck Plaintiff in the face. Defendant's response, a forceful punch leading to Plaintiff's unconsciousness, exceeded what could be deemed a reasonable defensive action, particularly given their history as friends unaccustomed to physical altercations. Defendant failed to establish any reasonable basis or grounds for apprehension or fear, required to justify self-defense, such as in the **Landry** case.

**Irwin**, 23-0475 at 18, 401 So.3d at 756.

In determining the percentages of fault, the trier of fact must consider the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. **Watson v. State Farm Fire & Cas. Ins. Co.**, 469 So.2d 967, 974 (La. 1985). Consideration of several factors ("Watson factors") aids in the determination of a proper degree of fault: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. **Watson**, 469 So.2d at 974.

**Lombard**, 23-0746 at 13, 398 So.3d 13 (quoting **Tisdale**, 22-01072 at 8, 359 So.3d at 490. Additional factors under La. R.S. 14:19 to be considered in allocating fault were also set forth in **Lombard**:

In addition to the **Watson** factors and expanding on them for intentional tort battery cases, we find that the following considerations are relevant in assessing the reasonableness of the conduct of the parties: (1) the nature of the initial actions that provoked the actor; (2) the reasonableness of force used by the actor relative to the amount of force used by the other party; and (3) the extent of injuries received by each party.

*Id.*, 23-0746 at 14, 398 So.3d 13-14 (footnotes omitted). Applying these factors, the appellate court majority in this case stated:

The **Watson** factors and other considerations dictate a finding of greater liability for the individual who responds with more severe violence, particularly taking into account the extent of injuries by the parties. This heightened allocation of liability on the most violent participant ensures that those who cause greater harm are held to a higher degree of accountability, which is a fundamental principle of justice and maintaining societal order. Holding the extreme aggressor more liable underscores the importance of proportionate responses and discouragement of excessive violence. This distribution of liability also reflects societal values that condemn unnecessary violence. By penalizing the most aggressive behaviors more severely, this allocation of fault prioritizes restraint, dialogue, and peaceful resolution over physical aggression and serves as a deterrent against excessive force by making the consequences of aggressive responses clear and significant.

. . . .

7

A review of the record in the case *sub judice*, in conjunction with the **Watson** factors, other considerations, and persuasive case law, supports the conclusion that Defendant bears significantly more fault than Plaintiff with respect to the nature of the conduct and the relationship to the damage. Plaintiff initially pushed Defendant away. Defendant responded by punching Plaintiff in the face, causing him to lose consciousness. The force used by Defendant was unreasonable. At the time Defendant struck Plaintiff, Plaintiff had pushed Defendant back and had turned away from Defendant to go inside his apartment. The amount of force used by Defendant was disproportionate to the amount of force used by Plaintiff. Plaintiff suffered serious physical injuries requiring emergency room care and follow-up treatment, while Defendant suffered no physical injuries.

**Irwin**, 23-0475 at 21-23, 401 So.3d at 758-59. Based on this analysis, the majority "assign[ed] 40% of the fault to Plaintiff for initiating physical contact and 60% to Defendant for his disproportionate and dangerous reaction." *Id.*, 23-0475 at 24, 401 So.3d at 759.

Accordingly, the court of appeal reversed the trial court's judgment and rendered judgment awarding plaintiff 60 percent of his damage award, totaling $33,000[3] plus judicial interest from the date of judicial demand. *Id.*, 23-0475 at 26, 401 So.3d at 761.

## DISCUSSION

### A. Applicable Law

"A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, is a battery." **Caudle v. Betts**, 512 So.2d 389, 391 (La. 1987). "The intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either

_____

[3] The appellate court majority awarded plaintiff $55,000 in general damages, but no medical expenses. See **Irwin**, 23-0475 at 25-26, 401 So.3d at 760 (citing **Lombard**, 23-0746 at 21-22, 398 So.3d at 17-18). The appellate court majority found that the proof of medical expenses was inadequate.

a harmful or offensive contact without the other's consent." *Id.* (Internal citations omitted).

As recognized in **Landry**, over time, the jurisprudence recognized an "aggressor doctrine" whereby the plaintiff would be precluded from tort recovery when "the plaintiff acts in such a way to provoke a reasonable person to use physical force in fear or anticipation of further injury." **Landry**, 02-1443 at 6-7, 851 So.2d at 949 (citing **Slayton v. McDonald**, 29,257, p. 5 (La.App. 2 Cir. 2/26/97), 690 So.2d 914, 917. In **Slayton**, the court stated:

> LSA-C.C. Art. 2315 is the basis for tort liability in Louisiana. However, Louisiana's aggressor doctrine precludes tort recovery where the plaintiff acts in such a way to provoke a reasonable person to use physical force in fear or anticipation of further injury at the hand of the aggressor plaintiff, **unless the person retaliating has used excessive force to repel the aggression**.
>
> A plaintiff is said to be the aggressor when he is at fault in provoking the altercation in which he was injured. The question of which party is the aggressor must be decided on the peculiar facts and circumstances of each situation.
>
> Even when another party is the initial aggressor, the victim **may use only so much force as is reasonably necessary to repel the attack** and if the victim goes beyond that point, he is liable for damages. In determining the amount of force which is justified in repelling an attack, all facts and circumstances at the scene of the incident must be considered.

**Slayton**, 29,257 at 5-6, 690 So.2d at 917-18 (emphasis added; citations omitted.)

In **Landry**,[4] this court discussed the history of Louisiana's intentional tort law, distinguishing the defenses of consent and self-defense from the aggressor doctrine:

> Louisiana's intentional tort doctrine has traditionally afforded an intentional tortfeasor a **full defense** if he can establish **consent,**

---

[4] **Landry** arose from an altercation in a bar between two friends, Byron Landry and Luke Bellanger, Jr. When Landry began making insulting comments toward Bellanger, Bellanger asked Landry to step outside the bar. According to Bellanger, Landry began pushing him. Bellanger then struck Landry in the head with his fist, causing Landry to fall on the concrete and sustain serious injuries. *Id.*, 02-1443 at 17-18, 851 So.2d at 955-56.

**privilege or self-defense, or enough provocation to trigger the aggressor doctrine**; and a partial defense if the defendant can show a "merely verbal" provocation for a mitigation of damages.

**Hence, the existence of consent means the defendant did not commit a tort and the existence of a privilege means the defendant's tort was justified**. Conversely, Louisiana's aggressor and mitigation doctrines are victim-fault defenses. Neither theory implies that no tort has occurred or that the defendant's conduct was justified, but instead seek to penalize the victim. ... **On this analysis the percentage-fault approach should replace both the aggressor doctrine and the mitigation doctrine, while leaving the full defenses of consent and privilege intact. In this way the comparative fault principles will be confined to the job they were designed to do-taking victim fault into account**.

*Id.*, 02-1443 at 11, 851 So.2d at 952 (emphasis added; internal citations omitted).

The **Landry** court then discussed "whether the aggressor doctrine is still a valid defense that would bar the plaintiff's recovery following the 1996 amendments to Article 2323," concluding that aggressor doctrine was incompatible with comparative fault:

The above provisions indicate that Louisiana employs a "pure" comparative fault system, whereby the fault of all persons causing or contributing to injury is to be compared. When it adopted the comparative fault system, Louisiana abolished the contributory negligence feature, which completely barred the recovery of injury victims because of their fault, our tort law formerly embraced prior to 1980. Applying the aggressor doctrine to bar plaintiff's recovery would reintroduce some vestige of contributory negligence law to our tort system and ignore the plain language of Article 2323(A) that directs the court to allocate a proportion of fault to every party contributing to the injury.

*Id.*, 02-1443 at 11-12, 851 So.2d at 952-53 (internal citation omitted).

Because the trial court failed to apply a comparative fault analysis,[5] this court in **Landry** determined the trial court committed legal error in applying La. C.C. art.

---

[5] The trial court in **Landry** found Bellanger was liable for Landry's injuries. Although it found Landry's actions were "significant" in provoking Bellanger's actions, the court declined to assess any fault to Landry. The court of appeal reversed, finding the trial court erred in failing to apportion fault. Fault was apportioned equally between Landry and Bellanger. *Id.*, 02-1443 at 5-6, 851 So.2d at 948-49.

2323(C),[6] "thereby concluding that the plaintiff's intentional conduct could not [a]ffect the defendant's liability and should not be included in the allocation of fault to all parties contributing to plaintiff's injuries." *Id.*, 02-1443 at 15, 851 So.2d at 954. Nonetheless, based on a *de novo* review of the record, the **Landry** court found Bellanger was acting in self-defense and was, therefore, without fault:

> Absent a qualifying privilege, any provocative or aggressive conduct on the part of the plaintiff should be incorporated into the allocation of fault by the trier of fact. However, simply because the trier of fact must consider the fault of both plaintiff and defendant, does not mean that an aggressive plaintiff can avoid responsibility for his conduct. In fact, nothing prevents a trier of fact from determining that the plaintiff's conduct was of such a provocative nature as to render it the sole cause of his injury. Thus, we must consider Landry's conduct to determine whether Bellanger was acting in self-defense, such that his conduct was justified or privileged and precludes recovery by Landry, or whether self-defense is unavailable as a complete defense, such that Landry and Bellanger's relative fault must be compared. We find, after a *de novo* review of the record, that Bellanger was acting in self-defense and is therefore without fault in causing Landry's injuries.

---

[6] Concerning comparative fault, La. C.C. art. 2323 provides:

A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

Pursuant to La. C.C. art. 2323(C), "when plaintiff is injured as a result of the fault of an intentional tortfeasor, his negligence shall not reduce his recovery." "In the face of the silence of La. C.C. art. 2323(C) regarding how to address the comparative fault of two intentional actors, [it] can [be] extrapolate[d] from paragraphs A and B of La. C.C. art. 2323 that the fault of the intentional actors can be compared." **Landry**, 02-1443 at 14, 851 So.2d at 954. Accordingly, where the plaintiff's conduct is intentional, rather than negligent, La. C.C. art. 2323(C) does not apply. *Id.*

11

***Id.***, 02-1443 at 16-17, 851 So.2d at 955.

Subsequently, the legislature enacted La. R.S. 9:2800.19,[7] which provides:

A. A person who uses reasonable and apparently necessary or deadly force or violence for the purpose of preventing a forcible offense against the person or his property in accordance with R.S. 14:19 or 20 is immune from civil action for the use of reasonable and apparently necessary or deadly force or violence.

B. The court shall award reasonable attorney fees, court costs, compensation for loss of income, and all expenses to the defendant in any civil action if the court finds that the defendant is immune from suit in accordance with Subsection A of this Section.

This court has not addressed La. R.S. 9:2800.19 since its enactment, and the appellate jurisprudence discussing this statute is very limited. However, the appellate court majority in **Lombard** noted that La. R.S. 9:2800.19 created an immunity or privilege:

The **Landry** case effectively removed the bar to recover damages under the former expansive analysis of "consent." **Courts are now directed to perform a comparative fault analysis when the plaintiff does not "consent" to the battery but nevertheless provoked physical retaliation by the defendant who does not enjoy immunity from liability or privilege under La. R.S. 9:2800.19 due to unreasonable retaliatory force**. "[A]bsent a qualifying privilege, any provocative or aggressive conduct on the part of the plaintiff should be incorporated into the allocation of fault by the trier of fact." **Landry**, 02-1443, p. 16, 851 So.2d at 955. Under a more limited, post-**Landry** "consent" theory, courts must consider whether the plaintiff "voluntarily participate[d] in an altercation." Inquiries as to the reasonableness of the plaintiff's initial actions and defendant's retaliatory actions are reviewed under a comparative fault analysis.

Accordingly, comparative fault applies in intentional tort battery cases when both: (1) the plaintiff does not **consent** to the battery; and (2) **the defendant fails to prove self-defense under La. R.S. 9:2800.19 immunity**.

**Lombard**, 23-0746 at 9-10, 398 So.3d at 10-11(emphasis added; footnotes omitted).

In summary, the law in this area, as exemplified by **Landry**, mandates a comparative fault approach in battery cases, explaining that "any provocative or

---

[7] See 2006 La. Acts, 786, § 1.

aggressive conduct on the part of the plaintiff should be incorporated into the allocation of fault by the trier of fact." **Landry**, 02-1443 at 16, 851 So.2d at 955. **Landry**, therefore, rejected the aggressor doctrine as incompatible with principles of comparative fault. *Id*., 02-1443 at 13, 851 So.2d at 953. However, **Landry** recognized that a defendant may still assert defenses such as consent[8] or self-defense[9] which may eliminate the plaintiff's recovery. *Id.*, 02-1443 at 13, 16, 851 So.2d at 953, 955 (referencing "qualifying privilege[s]").

Following the rendition of **Landry**, the legislature enacted La. R.S. 9:2800.19, which provides immunity for a person "who uses reasonable and apparently necessary or deadly force or violence for the purpose of preventing a forcible offense against the person." There is no indication that the legislature intended to legislatively overrule **Landry** by its subsequent adoption of La. R.S. 9:2800.19.

**B. Application of the Law to the Facts**

A review of the trial court's reasons for judgment in this case indicates the court apparently confused La. R.S. 9:2800.19 with the aggressor doctrine, as the court stated, "[a]pplicable jurisprudence leads this Court to opine La. R.S. 2800.19, **also known as the aggressor doctrine**, does not apply." (Emphasis added.) Because of this error, the trial court did not make any findings regarding whether the immunity conferred by La. R.S. 9:2800.19 would apply under the facts of this case.

---

[8] "[A] plaintiff who disregards a known risk has consented to his own injury and agreed to relieve the potential defendant of liability for that injury." **Landry**, 02-1443 at 13, 851 So.2d at 953.

[9] "Self defense ... is a true defense in that it operates as a privilege to committing the intentional tort." **Landry**, 02-1443 at 15-16, 851 So.2d at 954-55. "[I]n order to succeed on a claim of self-defense (not involving deadly force), there must be an actual or reasonably apparent threat to the claimant's safety and the force employed cannot be excessive in degree or kind." *Id.*, 02-1443 at 16, 851 So.2d at 955. "The privilege of self-defense is based on the prevention of harm to the actor." *Id.*

The trial court went on to find that "Louisiana's comparative fault law will govern any findings of this Court," explaining that "to determine whether Plaintiff's conduct was of such provocative nature as to render it the sole cause of his claimed injuries, this Court must determine whether Plaintiff 'consented' to said battery." The court's use of the term "provocative" in this context is a possible cause for concern as it seems to invoke the aggressor doctrine in which plaintiff was "said to be the aggressor when he is at fault in provoking the altercation in which he was injured." See **Slayton**, 29,257 at 5, 690 So.2d at 917. Notably, the jurisprudence does not indicate provocation is a prerequisite for consent, but instead explains consent is determined by the plaintiff's voluntary participation in the altercation. See **Cole v. State Dep't of Pub. Safety & Corr.**, 01-2123, p. 12 (La. 9/4/02), 825 So.2d 1134, 1143. "The defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim." **Cole**, 01-2123 at 11, 825 So.2d at 1142 (citing **Andrepont v. Naquin**, 345 So.2d 1216, 1219 (La.App. 1 Cir. 1977)). "Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances." *Id.* "When a person voluntarily participates in an altercation, he may not recover for the injuries which he incurs, unless force in excess of that necessary is used and its use is not reasonably anticipated." *Id.*, 01-2123 at 12, 825 So.2d 1143 (citing **Andrepont**, 345 So.2d at 1219). "The use of unnecessary and unanticipated force vitiates the consent." *Id.* As noted by the **Andrepont** court:

> This concept is similar to a situation in which a person responds to an aggressive act or seeks to defend himself from real or reasonably apparent attacks by others but uses more force than is reasonably necessary to repel the aggression or apparent aggression. In such situations the use of force in excess of what is necessary results in liability for injuries causes by the employment of such unnecessary force.

14

**Andrepont**, 345 So.2d at 1220 (citations omitted). As **Cole** and **Andrepont** explain, "[t]he use of unnecessary and unanticipated force" can vitiate consent, rendering the person responding to another's act of aggression or apparent aggression liable for injuries caused by the employment of force that is unnecessary and not reasonably anticipated to repel such action. *Id.* This standard is similar to the standard set forth in La. R.S. 9:2800.19, which requires a showing of "reasonable and apparently necessary or deadly force or violence" for statutory immunity to apply.

The divergence in the outcomes by the trial court and the court of appeal stems from a dispute over whether defendant's reaction to plaintiff's push was reasonable and necessary. The trial court found that "Plaintiff['s] pushing Defendant in a forceful manner was sufficient, under reasonable appearances, to provoke the physical retaliation distributed by Defendant." It further found defendant's actions were a reasonable response to plaintiff's push, noting:

> Plaintiff ... initially believed Defendant had pushed him in the same manner Plaintiff pushed Defendant. Plaintiff further testified he was unaware Defendant punched him in the face and remained unaware until Defendant informed Plaintiff what he had actually done.

However, the court of appeal found the record established that "Plaintiff proved that he did not voluntarily participate in altercation and did not reasonably anticipate the extent of force used by Defendant." **Irwin**, 23-0475 at 13, 401 So.3d at 753. It reasoned "neither Plaintiff nor Defendant entered into the altercation knowing that there would be a physical or violent altercation that would result in serious bodily injury." *Id.*, 23-0475 at 12, 401 So.3d at 753 (distinguishing **Guillot**, 14-364 at 14, 161 So.3d at 850, and **Richard**, 535 So.2d at 416).

Based on my review of the record, I question whether the trial court's view of the reasonableness of defendant's physical retaliation in response to plaintiff's

forceful push of defendant, which only moved the defendant a step backwards, leaving them still face-to-face, was tainted by the trial court's belief that plaintiff provoked the altercation, a determination which seems to implicitly resurrect the aggressor doctrine. Even accepting that plaintiff may have initially started the altercation by pushing defendant, defendant's own testimony calls into question the reasonableness of his reactions as he admits to "blacking out" as soon as plaintiff put his hand on defendant and impulsively punching plaintiff due to "adrenaline, shock, and fear." The trial court attempted to minimize defendant's conduct by stating plaintiff was unaware defendant punched him in the face. However, the undisputed evidence shows that plaintiff was knocked to the ground unconscious by the punch.

The medical evidence establishes that in addition to a concussion with a loss of consciousness, plaintiff sustained a lip laceration, closed fracture of the nasal bone, maxillary fracture, and whiplash to his neck. I disagree with the majority's apparent belief that the force of the punch necessary to cause such injuries constitutes a reasonable reaction to plaintiff's push of the defendant, albeit forceful. Even accepting the trial court's finding that plaintiff may have voluntarily consented to participate in the altercation, I believe the trial court was clearly wrong in finding defendant responded with reasonable force, under the circumstances especially given their prior history, and in failing to address the necessity of defendant's reaction and whether such action was "reasonably anticipated" by plaintiff. A forceful open handed push to separate two individuals engaged in an increasingly heated argument while standing toe-to-toe does not justify the harm inflicted by the defendant.[10]

---

[10] See **Dean v. Nunez**, 423 So.2d 1299, 1302 (La.App. 4 Cir. 1982), finding defendant's punch of plaintiff after a shove cannot be justified by self-defense.

16

In sum, even if the trial court did not believe that plaintiff pushed defendant in an effort to retreat to his apartment, I find that the force employed by defendant in his adrenaline-fueled response to plaintiff's push "was not used in defense, was in excess of what was reasonably necessary to repel the advances of the plaintiff ... [, was not reasonably anticipated,] and was an implementation of force to which the plaintiff did not consent." See **Andrepont**, 345 So.2d at 1220. Accordingly, the trial court erred in finding that "Plaintiff pushing Defendant in a forceful manner was sufficient, under reasonable appearances [sic], to provoke the physical retaliation distributed by Defendant." Under the facts of this case, plaintiff's consent, if any, was vitiated.[11] See *id.* For these reasons, defendant is also not immune from liability under La. R.S. 2800.19(A). By barring plaintiff's recovery under the defense of consent or the statutory immunity, the majority of this court "essentially [gives its] approval to the continuance of the archaic principles behind the aggressor doctrine." See **Landry**, 02-1443 at 4, 851 So.2d at 958. (Kimball, J., dissenting).[12]

Because neither consent nor statutory immunity is available as a complete defense, plaintiff and defendant's relative fault must be compared. See **Landry**, 02-1443 at 16, 851 So.2d at 955. While plaintiff should bear some fault for the altercation, I find it is unreasonably harsh to deny him any recovery. Through the application of comparative fault principles, the court of appeal determined plaintiff was 40 percent at fault and defendant was 60 percent at fault. These percentages appear to be reasonable under the facts of this case.

---

[11] As in **Andrepont**, "the force employed by the defendant was not used in defense, was in excess of what was reasonably necessary to repel the advances of the plaintiff[,] and was an implementation of force to which the plaintiff did not consent." *Id.* 345 So.2d at 1220.

[12] I joined the majority opinion in **Landry**, which embraced a comparative fault analysis, but found no fault on the part of defendant based on the particular facts of that case. However, as expressed by Justice Kimball in her **Landry** dissent, the majority's refusal to allocate any fault to defendant in this particular case essentially equates to a continuation of the aggressor doctrine.

**CONCLUSION**

While this case might at first glance appear to be one where the court of appeal incorrectly substituted its factual findings for the trial court's findings, I believe a closer examination shows the court of appeal's intervention was justified. The trial court's judgment reveals some confusion over the applicable legal principles, and the trial court's reference to plaintiff's provocation of defendant suggests the trial court may have been applying an aspect of the aggressor doctrine (which was determined to be contrary to Louisiana's tort system in **Landry**, despite its statement that it was not doing so). Moreover, in my opinion, the trial court's factual finding that defendant's actions were reasonable is clearly wrong based on the evidence in the record. The undisputed evidence shows plaintiff was knocked unconscious by defendant's punch and sustained significant physical injuries as a result. Defendant's adrenaline-fueled reaction does not appear to be a reasonable response to plaintiff's push, nor was it necessary or reasonably anticipated under the facts of this case.

The emphasis on the reasonableness of defendant's actions is highlighted by the post-**Landry** enactment of La. R.S. 9:2800.19, which provides immunity for a person "who uses **reasonable and apparently necessary** or deadly force or violence for the purpose of preventing a forcible offense against the person." (Emphasis added.) This statute provides that absent a showing of reasonable force, full immunity is inapplicable.

Based on my review of the record, I believe the court of appeal reached the correct result in applying the comparative fault law and awarding damages in favor of plaintiff. Therefore, I would affirm the decision of the court of appeal. For these reasons, I respectfully dissent from the majority's decision to reinstate the trial court's judgment.

18

SUPREME COURT OF LOUISIANA

No. 2024-C-01043

JUSTIN IRWIN

VS.

JOHN BRADLEY BRENT

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans
Civil

**McCallum, J., concurs in the result and assigns reasons.**

I agree the majority and the trial court have reached the correct result in this case.  However, I disagree with the analysis.  Reliance on *Landry v. Bellanger*, 2002-1443 (La. 5/20/03), 851 So. 2d 943 is misplaced.  I urge this Court to reconsider the continued efficacy of *Landry*.  However, because I find the ultimate outcome to be correct, I respectfully concur in the result.

Petitioner filed suit against the defendant for an intentional tort.  Petitioner also committed an intentional tort.  He forcefully pushed the defendant, prompting the defendant to then punch petitioner, rendering him unconscious.  The petitioner and defendant engaged in a physical altercation, one that was admittedly less successful on the part of the petitioner.  Physical altercations of this type, necessarily involve a series of independent intentional torts and any attendant defenses.

After the presentation of the petitioner's case, the trial court granted defendant's motion for involuntary dismissal, concluding the petitioner was 100% at fault for the altercation, and that the petitioner's actions were "sufficient, under reasonable appearances, to provoke the physical retaliation distributed by

Defendant." As a result, the action was dismissed with prejudice. This necessarily means the court found defendant justified in the hitting.

The court of appeal reversed, finding the trial court committed legal error, necessitating a *de novo* review. It then found the defendant 60% liable for the battery he committed and awarded $33,000.00 in general damages to petitioner. In reversing the court of appeal and reinstating the trial court's judgment, the majority finds the following:

> [W]e do not find the district court applied any incorrect principles of law or made any prejudicial errors of law which would deprive the parties of any substantive rights. While the district court's reasons are perhaps inartful in some respects, the court essentially finds plaintiff consented to the battery, and defendant's actions in response were not unreasonable. This analysis is consistent with comparative fault principles as enunciated in *Landry v. Bellanger*, 2002-1443 (La. 5/20/03), 851 So. 2d 943.

This makes clear the lower courts considered comparative fault applications. The majority, too, appears to consider comparative fault principles as well. As cited by the majority, the idea that comparative fault is applicable where two intentional tortfeasors are involved, each committing an intentional tort against the other, is derived from *Landry*. To reach this conclusion, the *Landry* Court held the following:

> Section (C) of art. 2323 provides:
>
> > C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
>
> Nothing in this section prevents the determination of the percentage of fault of all persons causing or contributing to the injury at issue. Rather, Section C provides that when plaintiff is injured as a result of the fault of an intentional tortfeasor, his negligence shall not reduce his recovery. Thus, reading each section of La. C.C. art. 2323 and giving effect to each portion of the Article, we find that the fault of all persons causing or contributing to injury, regardless of the basis of liability, is to be determined, and, if a negligent plaintiff is injured as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced by his percentage of fault.

It is appropriate to consider each party's respective fault when a matter involves intentional tortfeasors. In prohibiting the reduction of a negligent plaintiff's damages, Article 2323(C) reflects a legislative determination that on the continuum of moral culpability, the act of an intentional actor should not benefit from a reduction in the damages inflicted on a less culpable negligent actor. In the face of the silence of La. C.C. art. 2323(C) regarding how to address the comparative fault of two intentional actors, we can extrapolate from paragraphs A and B of La. C.C. art. 2323 that the fault of the intentional actors can be compared. In the instant case, the plaintiff's conduct was not merely negligent, but intentional, and therefore the provisions of Section C are inapplicable.

*Landry*, 2002-1443, p. 14-15, 851 So. 2d at 953–54.

It is here that I disagree with *Landry* and its application of comparative fault principles in cases where two parties each commit an intentional tort against the other. The Legislature's wording of Article 2323 may very well be inartful. However, the principle that comparative fault should *not* apply to an intentional tortfeasor, regardless of whether another intentional tortfeasor is the opposing party, is well founded and conforms with the historical understanding of intentional torts. Indeed, Professor Thomas C. Galligan, Jr., Dean (2016-2019) and Professor of Law, Paul M. Hebert Law Center, Louisiana State University, explains that, in essence, intentional torts present an "all or nothing" issue:

In deciding if the defendant breached his duty not to batter, as defined above, the factfinder determines whether the defendant did or did not comply with the applicable legal obligation. That decision would turn on the answers to several factual questions: did the defendant have intent? Was the contact with the person of another? Was the contact harmful or offensive? These are compliance questions, and, as such, they are breach questions. Cause-in-fact is often quite simple. Did the intended contact occur? Did the defendant with intent to cause a contact that is harmful and offensive bring about that contact?

*THE STRUCTURE OF TORTS*, 46 Fla. St. U. L. Rev. 485, 523. Fortuitously, Professor Galligan happened to be using the example of the intentional tort of battery. The ultimate consideration, therefore, is simple – did the person commit the intentional tort or not? In this case, did defendant batter the petitioner?

3

You cannot partially commit an intentional tort. You cannot halfway batter someone; you cannot commit fifty per cent of a trespass. Thus, one who commits an intentional tort is fully liable for the damages he or she has caused. Likewise, where two parties each commit an intentional tort, one against the other, then both are fully liable for the damages they have caused to the other. No comparison of fault is necessary, nor, should it be allowed.

Instead, an intentional tortfeasor may rely on a defense or other applicable doctrine to avoid liability. On this one issue I agree with the trial court –the specific facts and evidence of this case show the defendant was reasonable in defending himself and was therefore entitled to a dismissal of the petitioner's action with prejudice. It is for this reason that, even though *Landry* was wrongly decided, I concur in the result.

## SUPREME COURT OF LOUISIANA

## No. 2024-C-01043

## JUSTIN IRWIN

## VS.

## JOHN BRADLEY BRENT

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans
Civil

**GUIDRY, J. dissents for the reasons assigned by Chief Justice Weimer.**